**OKLAHOMA NURSING HOME ASSOCIATION, Ambassador Manor South, Hillcrest Manor, Mooreland Golden Age Home, Oaks Healthcare Center, Sunset Estates of Watonga, and Valliant Care Center, Plaintiffs,**

v.

**Benjamin DEMPS, Jr., Director of the Oklahoma Department of Human Services, and John ORR, Chairman of the Commission for Human Services, Oklahoma Department of Human Services, Defendants.**

No. CIV-91-1282-R.

United States District Court,
W.D. Oklahoma.

Feb. 28, 1992.

Joseph W. Metro, Richard A. Mildren, Chapel, Riggs, Abney, Neal & Turpen, Oklahoma City, Okl., Joel M. Hamme, Reed, Smith, Shaw & McClay, Washington, D.C., for plaintiffs.

John G. Fears, Dept. of Human Services, General Counsel, Legal Div., Oklahoma City, Okl., for defendants.

## ORDER

DAVID L. RUSSELL, District Judge.

Before the Court is the Defendants' Motion to Dismiss.

### Background

The Plaintiffs are the Oklahoma Nursing Home Association, an association of Oklahoma nursing facilities, and six private nursing homes. Many of the Association's members, and the six nursing home Plaintiffs, participate in Oklahoma's Medicaid program. Defendant, Benjamin Demps, Jr., is the Director of the Oklahoma Department of Human Services. Defendant,

John Orr, is the Chairman of the Commission for Human Services of the Oklahoma Department of Human Services. The Plaintiffs claim that the Defendants "committed numerous violations of federal law" in setting the fiscal year 1992 Medicaid reimbursement rate for nursing facilities serving adults.[1] The Plaintiffs contend that the alleged violations render Oklahoma's 1992 Medicaid rate for nursing homes procedurally invalid.[2]

A brief synopsis of the Medicaid Act, 42 U.S.C. §§ 1396 et seq., is helpful in analyzing the Plaintiffs' claims. Medicaid is a cooperative federal-state program through which the federal government provides financial assistance to states, to enable states to furnish medical care to qualifying individuals. Nursing facilities serving adults are among the categories of Medicaid covered expenses. The federal and state governments share the cost of such aid. 42 U.S.C. § 1396. State participation in the Medicaid program is voluntary, but participating states must comply with certain requirements imposed by the Medicaid Act, and with certain regulations promulgated by the Secretary of Health and Human Services. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). Participating states are required to submit to the Secretary and have approved a "Plan for medical assistance," which must contain a comprehensive statement describing the nature and scope of the State's Medicaid program. 42 C.F.R. § 430.10 (1989). The state Plan must establish a scheme for reimbursing nursing facilities and other health care providers for medical services provided to needy individuals. *Wilder*, 496 U.S. at 502, 110 S.Ct. at 2513, 110 L.Ed.2d at 462.

Section 1902(a)(13) of the Medicaid Act establishes the requirements for states' Medicaid reimbursement plans for health care providers. As modified in 1980 by an amendment known as the Boren Amendment, the section provides that:

"A State plan for medical assistance must ...

"provide ... for payment ... of the ... nursing facility services ... provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State ...) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards...."

42 U.S.C. § 1396a(a)(13)(A). In the case of nursing facilities, states must take into account the costs of services required to attain the highest practicable physical, mental, and psychosocial wellbeing of each resident eligible for Medicaid benefits. 42 U.S.C. § 1396a(a)(13)(A).

In *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Supreme Court held that the Medicaid Act created a federal right enforceable by health care providers under Title 42 U.S.C. § 1983 to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility that provides care to Medicaid patients. The right is not merely a procedural right that rates be accompanied by findings and assurances of reasonableness and adequacy; the Act provides a substantive right to reasonable and adequate rates as well. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498 at 508, 110 S.Ct. 2510 at 2517, 110 L.Ed.2d 455 at 467.

In Oklahoma, nursing facilities are paid a statewide, flat Medicaid rate. The rate is prospective in nature, meaning that the rate is established in advance of the rate period. The rate remains in effect for one

---

**1.** Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, p. 1.

**2.** The Plaintiffs do not, at this stage, directly challenge the substantive adequacy of the Medicaid rates, but rather, challenge the procedure by which the rates were adopted. Plaintiffs' Memorandum, p. 1.

fiscal year. Under Oklahoma's approved Medicaid Plan, the nursing facility rate is computed by projecting the mean cost per patient/day. This cost is determined by using historical cost data, and adjusting for inflation and other cost trends in the intervening period. The Plaintiffs' Complaint alleges numerous irregularities in the computation of Oklahoma's fiscal year 1992 nursing facility Medicaid rates.

The Defendants move the Court to dismiss Counts I, IV, V, VI, and VIII of the Plaintiffs' ten-count Complaint on the ground that each of these counts fails to state a claim upon which relief can be granted.

## COUNT I

■ Count I alleges that the Defendants violated the Boren Amendment and its implementing regulations[3] because Oklahoma's 1992 Medicaid nursing facility rate did not properly take into account economic trends and conditions, and because the rate was based solely on budgetary considerations. The Defendants assert that Count I fails to state a claim of either a procedural or substantive violation of the Boren Amendment. Defendants argue that there is no *procedural* requirement to account for economic trends, or to disregard budgetary considerations, and that, therefore, Count I could not state a procedural claim. Defendants argue, moreover, that Count I does not state a substantive claim because it does not challenge the bottom-line reasonableness or adequacy of the Medicaid rate.[4]

The Defendants posit that their only procedural obligations under the Boren Amendment are to periodically "find" and make "assurances" to the federal government that Oklahoma's rates are adequate to meet the costs which must be incurred by efficiently and economically operated facilities.[5] The Plaintiffs maintain that consideration of those economic factors which affect the cost of providing Medicaid-covered services is an important part of the state's procedural duty to find and assure that its Medicaid rates are reasonable and adequate. Plaintiffs argue, in other words, that the Defendants have not met their duty to find and assure that the rates are reasonable and adequate if their sole concern in setting the rates was the state's fisc. The Court agrees. Although it is, of course, appropriate for a state to consider its own budget in setting Medicaid reimbursement rates, states are not permitted to disregard other factors. If, as Plaintiffs allege, Defendants have based the State's 1992 Medicaid reimbursement rate *solely* on the State's own budgetary concerns, while ignoring economic factors which increase the cost of care in an "efficiently and economically operated facility," then a reasonable factfinder could conclude that the Defendants have violated the Plaintiffs' procedural right to findings and assurances that the rates are reasonable and adequate to cover such costs of care. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The Court cannot conclude, beyond doubt, that the Plaintiffs can prove no set of facts in support of Count I which would entitle them to relief.

## COUNTS IV AND VI

■ The Defendants seek dismissal of Counts IV and VI on the ground that they claim violations of Medicaid regulations

---

**3.** Title 42 U.S.C. § 1396a(a)(13) and 42 C.F.R. § 447.250, et seq.

**4.** Defendants initially argued that "[u]nder the Boren Amendment, the only issue is whether the actual rate—the "bottom line"—is reasonable and adequate...." Memorandum In Support of Defendants' Motion to Dismiss, p. 9. Defendants have wisely altered their course in their Reply brief, apparently recognizing that Medicaid providers may challenge the procedure by which reimbursement rates are fixed as well as the "bottom line" actual rate. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). *See Amisub (PSL), Inc. v. Colorado Dept. of Social Services*, 879 F.2d 789 (10th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

**5.** Reply Memorandum at p. 2, *citing* 42 U.S.C. § 1396a(a)(13)(A), and *Amisub (PSL), Inc. v. State of Colorado Dept. Social Services*, 879 F.2d 789, 795–96 (10th Cir.1989), *cert. denied*, 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990).

which, according to the Defendants, are not enforceable in a 42 U.S.C. § 1983 proceeding. The Defendants argue that neither the public notice regulation relied on in Count IV, 42 C.F.R. §§ 447.205(c)(1) and (3), nor the Medical Care Advisory Committee regulation relied on in Count VI, 42 C.F.R. § 431.12, supports a private right of action under Section 1983. Memorandum in Support of Defendants' Motion to Dismiss, pp. 11–12.

Section 1983 provides a remedy for deprivation under color of state law of "any rights ... secured by the Constitution and laws" of the United States. Title 42 U.S.C. § 1983. A cause of action under Section 1983 arises only if two requirements are met. First, the federal law relied upon must be one which creates private rights enforceable under Section 1983. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *West Virginia University Hospitals, Inc. v. Casey*, 885 F.2d 11 (3rd Cir. 1989), *citing Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Second, Congress must not have foreclosed private enforcement of the statute in the enactment itself. *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Wright v. Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Some courts have found federal agency regulations sufficient to support a cause of action under Section 1983. *See, e.g., Wright*, 479 U.S. 418, 107 S.Ct. 766, 770, 93 L.Ed.2d 781.

Counts IV and VI allege violations not of the Medicaid Act itself, but of its implementing regulations. Count IV alleges that the Defendants failed to comply with the public notice requirements of 42 C.F.R. §§ 447.205(c)(1) and (3). This regulation provides, in pertinent part:

§ 447.205 **Public notice of changes in Statewide methods and standards for setting payment rates.**

(a) *When notice is required.* Except as specified in paragraph (b) of this section, the agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates for services....

(c) *Content of notice.* The notice must—

(1) Describe the proposed change in methods and standards; ... [and]

(3) Explain why the agency is changing its methods and standards;

Count VI alleges that the Defendants failed to consult with a Medical Care Advisory Committee in the development of Oklahoma's 1992 Medicaid rate for nursing facilities, as required by 42 C.F.R. § 431.12. This regulation provides:

§ 431.12 **Medical care advisory committee.**

(a) *Basis and purpose.* This section, based on section 1902(a)(4) of the Act, prescribes State plan requirements for establishment of a committee to advise the Medicaid agency about health and medical care services.

(b) *State plan requirement.* A State plan must provide for a medical care advisory committee meeting the requirements of this section to advise the Medicaid agency director about health and medical care services....

(d) *Committee participation.* The committee must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

(f) *Committee staff assistance and financial help.* The agency must provide the committee with—

(1) Staff assistance from the agency and independent technical assistance as needed to enable it to make effective recommendations; and

(2) Financial arrangements, if necessary, to make possible the participation of recipient members.

The parties' first area of disagreement is whether and when administrative regulations can support a private cause of action under Section 1983. The Plaintiffs, citing *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 423, 107

S.Ct. 766, 770, 93 L.Ed.2d 781 (1987), and *Guardians' Ass'n v. Civil Service Comm'n*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), would have the Court find that these regulations themselves create a cause of action under Section 1983. Defendants, citing the same cases, argue that administrative regulations support a cause of action under Section 1983 only insofar as they define some key statutory term.

In *Guardians' Ass'n, supra,* the Supreme Court utilized the implementing regulations of Title VI to conclude that Title VI prohibits the unintentional, "discriminatory impact" form of discrimination as well as intentional, racial discrimination. 463 U.S. at 594, 595, 103 S.Ct. at 3228, 3229, 77 L.Ed.2d at 876, 877. The Supreme Court in *Guardian* did not enforce the administrative regulation in isolation, but rather used the regulation to define the scope of rights created by Title VII. *Id.*

In *Wright, supra,* the Supreme Court held that tenants of low-income housing projects who claimed utility overcharges had a private cause of action under Section 1983. 479 U.S. 418 at 422–24, 107 S.Ct. 766 at 770, 93 L.Ed.2d 781 at 793. Under the Brooke Amendment to the Housing Act of 1937, Title 42 U.S.C. § 1437a, the Plaintiffs claimed a right to public housing at a rent which did not exceed a certain percentage of their income. The Plaintiffs claimed that by charging them an additional amount for utility use, the Defendant Housing Authority had violated their rights under the Housing Act and its implementing regulations. Although the Housing Act itself made no reference to utilities, the Act's implementing regulations of the Department of Housing and Urban Development clearly defined "rent" as including a reasonable amount for the use of utilities. The Court reasoned that nothing in the Housing Act evidences Congressional intent to preclude the tenants' Section 1983

claims against the Housing Authority, and that the benefits Congress intended to confer on tenants were sufficiently specific and definite as to qualify as enforceable rights under Section 1983. 479 U.S. at 431, 432, 107 S.Ct. at 774, 775, 93 L.Ed.2d at 793.

The Defendants argue that in both these cases, the Supreme Court utilized the agency regulation only to help define a key statutory term. The Defendants read the cases too narrowly. Neither of these cases held that administrative regulations could be used only to define a key term in Section 1983 cases. In *Wright,* for example, the agency regulation was used not only to define the term "rent," but to define the scope of the right created by the Housing Act. 479 U.S. at 429–430, 107 S.Ct. at 773–774, 93 L.Ed.2d at 792. In *Guardian, supra,* the agency regulation was not used merely to define the term "discrimination," but to define the scope and nature of the rights created by Title VII. Although *Wright* does not support the broad proposition that federal agency regulations, standing alone, may create rights enforceable under Section 1983;[6] it supports the proposition that courts may look to administrative regulations to define the scope of rights created by statute. 479 U.S. at 429–430, 107 S.Ct. at 773–774, 93 L.Ed.2d at 792.

In this case, the Medicaid Act which forms the basis of the right asserted by the Plaintiffs requires states Medicaid Plans to "provide such methods and procedures as may be necessary" to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers."[7] The Act, as amended in 1987, further requires states to provide "procedures to make available to the public the data and methodology used in establishing payment rates for nursing facilities...."[8] These statutory requirements imposed upon the states, and the

---

6. *West Virginia University Hospitals, Inc. v. Casey,* 885 F.2d 11 (3d Cir.1989), *citing Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 431–32, 107 S.Ct. 766, 775, 93 L.Ed.2d 781 (1987), and *Alexander v. Polk,* 750 F.2d 250, 259 (3d Cir.1984).

7. 42 U.S.C. § 1396a(a)(30)(A).

8. Title 42 U.S.C. § 1396a(a)(28)(C).

corresponding rights granted to health care providers, are defined and implemented by the public notice regulation, which sets out the specifics of how significant proposed changes in Medicaid rates are to be made available to the public.[9] The applicable sections of the Act, as well as the regulation, are stated in mandatory and not merely precatory terms. The public notice regulation and the statutory sections upon which the regulation is based are essential parts of, and help to implement, the right of health care providers to reasonable and adequate Medicaid reimbursement rates. The public notice regulation is sufficiently grounded in the recognized statutory rights of health care providers under the Medicaid Act to state a cause of action under Section 1983.

In addition, the Act requires that a state's Medicaid Plan must "provide such methods of administration ( ... including provision for utilization of professional medical personnel in the administration ... of the plan) as are found by the Secretary to be necessary for the proper and efficient operation of the plan...." [10] This section of the Act is implemented by the Medical Care Advisory Committee regulation, which specifies how professional medical personnel are to be used in the administration and operation of the Plan.[11] The regulation defines the statutory mandate to provide for the utilization of professional medical personnel in the operation of the Plan. If, as the Plaintiffs allege, the Defendants failed to consult with a medical care advisory committee in arriving at the 1992 reimbursement rate, they have failed to comply with the statutory mandate to utilize professional medical personnel in the administration of the Plan. The statute, as defined and implemented by the regulation, is an integral part of the Plaintiffs' enforceable, procedural right to have Medicaid reimbursement rates accompanied by findings and assurances of reasonableness and adequacy. Defendants' Motion to dismiss is denied with respect to Counts IV and VI.

## COUNT V

Count V of the Plaintiffs' Complaint seeks relief under Section 1983 for the Defendants' alleged failure to comply with Oklahoma's Medicaid Plan. The Plaintiffs argue that "[t]he failure of the state to comply with its approved plan is a violation of federal law ... because federal law mandates that the state must adhere to the plan." Count V claims that the Defendants have violated Oklahoma's approved Plan by "ignoring the cost implications of ... [a] federal minimum wage increase and [an] increase in worker's compensation rates...." [12] According to the Plaintiffs, the State's approved Plan requires consideration of such factors. The Plaintiffs also allege that the Defendants have used "different and inconsistent methodologies to compute the FY 1992 Medicaid rates" for nursing facilities and for intermediate care facilities for the mentally retarded; thereby breaching the State Plan which "envisions the same rate methodology for these Medicaid providers." [13] Furthermore, the Plaintiffs allege that the Defendants have not sought to amend the state's Plan so as

---

9. 42 C.F.R. § 447.205.

10. Title 42 U.S.C. § 1396a(a)(4).

11. 42 C.F.R. § 431.12, which provides in part:

   **§ 431.12 Medical care advisory committee.**
   (a) *Basis and purpose.* This section, based on section 1902(a)(4) of the Act, prescribes State plan requirements for establishment of a committee to advise the Medicaid agency about health and medical care services.
   (b) *State plan requirement.* A State plan must provide for a medical care advisory committee meeting the requirements of this section to advise the Medicaid agency director about health and medical care services....

   (d) *Committee membership.* The committee must include—
   (1) Board-certified physicians and other representatives of the health professions who are familiar with the medical needs of low-income population groups and with the resources available and required for their case;
   ...
   (e) *Committee participation.* The committee must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

12. Complaint at p. 27.

13. *Id.*

to excuse compliance with the Plan requirements they breached.[14]

Defendants rely on *Oberlander v. Perales*, 740 F.2d 116, 119 (2d Cir.1984), in which the Second Circuit reasoned "[t]here is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law." This Court is unpersuaded by the Second Circuit's analysis. Although it sounds reasonable to conclude that the State's Plan provisions do not "become federal law" just because federal law requires the state to adopt a Plan; this analysis ignores the fact that a separate federal law requires states to adhere to their Plans. Title 42 U.S.C. § 1396a(a)(1), 1396c. If a state doesn't adhere to its Plan then *that* provision of federal law which requires adherence is violated. If, as the Plaintiffs allege, Defendants violated the federal statute which requires them to adhere to Oklahoma's Medicaid Reimbursement Plan, they have violated federal law. Title 42 U.S.C. §§ 1396a(a)(1), 1396c. The Plaintiffs have, therefore, alleged a violation of federal law, and the question becomes whether the law violated is one which creates rights enforceable under Section 1983.

Whether those provisions of the Medicaid Act requiring states to comply with the terms of their Medicaid Plans create a "federal right" turns on whether those provisions were intended to benefit persons such as the Plaintiffs. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455, 467 (1990). If so, these provisions create an enforceable right unless they reflect merely a "congressional preference" for a certain kind of conduct rather than a binding obligation on the governmental unit, *Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517, 110 L.Ed.2d at 467, citing *Pennhurst State School and Hospi-*

*tal v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981), or unless the interest the Plaintiffs assert is so "vague and amorphous" that it is "beyond the competence of the judiciary to enforce." *Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517, 110 L.Ed.2d at 467, *citing Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989).

■ As health care providers rendering covered services to Medicaid patients, the Plaintiffs have a right, enforceable under Section 1983, to the adoption of reimbursement rates that are reasonable and adequate to meet the costs of an efficiently and economically operated facility. *Wilder*, 496 U.S. at 508, 110 S.Ct. at 2517, 110 L.Ed.2d at 476. This right has both procedural and substantive components,[15] and is implemented by the specific provisions of the Act which require each Medicaid participating state to adopt, obtain approval of, and adhere to a Medicaid Plan. There can be little doubt that health care providers, such as the Plaintiffs, are the intended beneficiaries of the statutory right to adherence to the Plan, and that the duty to adhere to the Plan is mandatory for participating states. Moreover, the Court finds no express provision or other specific evidence from the Medicaid Act itself that Congress intended to foreclose such private enforcement. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. at 519, 110 S.Ct. 2510, 2523, 110 L.Ed.2d at 474; *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981).[16] The Court finds, therefore, that Count V states a claim which, if proven, may entitle Plaintiffs to relief under Section 1983.

---

**14.** *Id.*

**15.** *Id.*

**16.** The Act does allow the Secretary, in certain cases, to withhold funds from a state which fails to comply with the terms of its Medicaid Plan. 42 U.S.C. § 1396c. The Secretary's ability to withhold funds is not a remedial scheme suffi-

cient to displace the remedy provided by Section 1983. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 519, 110 S.Ct. 2510, 2523, 110 L.Ed.2d 455, 474 (1990); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981); *Smith v. Robinson*, 468 U.S. 992, 1010–1011, 104 S.Ct. 3457, 3468, 82 L.Ed.2d 746 (1984).

## COUNT VIII

■ Defendants next seek dismissal of Count VIII of the Plaintiffs' Complaint. Count VIII seeks damages under Section 1983 for alleged violations of the Supremacy Clause of the United States Constitution (art. VI, cl. 2). The Supremacy Clause, of its own force, does not create rights enforceable under Section 1983; rather, it secures federal rights by according them priority whenever they come in contact with state law. *Golden State Transit v. Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989), *citing Chapman·v. Houston Welfare Rights Organization*, 441 U.S. 600, 613, 99 S.Ct. 1905, 1913, 60 L.Ed.2d 508 (1979).

Although the Supremacy Clause secures the federal rights asserted by Plaintiffs in Counts I through VII, it does not create a separate right enforceable under Section 1983. The Defendants' Motion to Dismiss shall be granted with respect to Count VIII.

See also 966 F.2d 579.

## CONCLUSION

The Defendants' Motion to Dismiss is hereby GRANTED with respect to Count VIII and DENIED in all other respects.

IT IS SO ORDERED.