**MOODY EMERGENCY MEDICAL SERVICE, INC., Plaintiff,**

v.

**The CITY OF MILLBROOK, et al., Defendants.**

**Civil Action No. 96–C–1827–N.**

United States District Court, M.D. Alabama, Northern Division.

June 12, 1997.

**490**

Neva C. Conway, Millbrook, AL, for Plaintiff.

Alex L. Holtsford, Jr., Nix, Holtsford & Vercelli, P.C., Montgomery, AL, Bob Allen, Millbrook, AL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

CARROLL, United States Magistrate Judge.

This matter is before the court for consideration of defendants' motions to dismiss filed January 9, 1997, and April 4, 1997. For the reasons discussed below, the court finds that the motions are due to be granted.

## I. INTRODUCTION

Plaintiff, Moody Emergency Medical Service, Inc., filed this action against the City of Millbrook, Alabama, its mayor Al Kelly, individually and in his official capacity, its Chief of the Fire Department Larry Brown, individually and in his official capacity, and Millbrook's former mayor and fire department chief, Moe Minor and Sidney Turner, respectively,[1] alleging that the city of Millbrook has a custom, policy and practice of referring emergency 911 calls only to the Millbrook Fire Department/Rescue Services. Plaintiff argues that Millbrook's method of assigning

---

**1.** The court refers to the city, its present and former mayors, and fire department chiefs col- lectively as "Millbrook."

emergency 911 calls allows the establishment of a monopoly by one emergency service provider, namely, the city of Millbrook's Fire Department. Plaintiff contends that Millbrook's practice violates the equal access provision of the Medicaid Subchapter of the Social Security Act, 42 U.S.C. § 1396a(a)(30)(A), the Fifth and Fourteenth Amendments of the United States Constitution and various state laws. Plaintiff seeks compensatory, declaratory and injunctive relief. Plaintiff alleges that this court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

After the Millbrook defendants moved to dismiss the complaint against them, plaintiff amended the complaint to add the Commissioner of the Alabama Medicaid Agency, Gwen Williams, in her official capacity, as a defendant. Plaintiff contends that the Alabama Medicaid Agency has failed to provide and enforce a proper and efficient plan to provide medical services to Medicaid and/or Medicare recipients. Plaintiff does not allege any additional causes of action against defendant Williams. Defendant Williams also moved to dismiss the complaint.

Defendants argue that the complaint should be dismissed for failure to state a claim. Defendants contend that plaintiff's claim alleging violation of the equal access provision of the Social Security Act must fail because Moody Emergency Services does not have standing to seek relief under that statute and plaintiff does not state a claim that is actionable under Section 1396a(a)(30)(A); and plaintiff's complaint does not allege a violation of the Fifth or Fourteenth Amendments. Additionally, defendant Williams argues that the complaint against her should be dismissed because she has no authority over Millbrook's operation of its 911 emergency service system.

## II. STANDARD OF REVIEW

The law is well settled that a complaint cannot be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss the court must construe the facts alleged in the complaint in the light most favorable to the plaintiff.[2] *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *Conley,* 355 U.S. at 45–46, 78 S.Ct. at 101–102; *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988), *aff'd sub nom. Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). If the allegations in the complaint do not state a cause of action as a matter of law, the motion to dismiss should be granted. *Neitzke v. Williams,* 490 U.S. 319, 326–327, 109 S.Ct. 1827, 1832–1833, 104 L.Ed.2d 338 (1989).

## III. DISCUSSION

The question before the court is whether a private emergency medical service may maintain an action against a municipality and state medicaid agency challenging the city's method for referring emergency 911.

### 1. Statutory Claim

Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental entities whose conduct under the color of state or local law deprives a plaintiff of rights, privileges or immunities secured by the U.S. Constitution or federal laws. 42 U.S.C. § 1983 (1982).[3] On its face, Section 1983 redresses

**2.** Since a motion to dismiss challenges the sufficiency of the complaint, it is inappropriate for the court to look beyond the face of the complaint to determine whether dismissal is warranted particularly when the motion to dismiss challenges the legal sufficiency of the complaint. *See Slagle v. United States,* 228 F.2d 673, 676–677 (5th Cir.1956). Therefore, the court will not consider the "additional materials" submitted by defendant Williams, i.e. the affidavit of Robert

Dale Boyles and Alabama Payment Summary. *See also Fed.R.Civ.P.* 12(b) (If, ... matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ... ).

**3.** The text of Section 1983 provides that [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected,

violations of federal statutes as well as constitutional rights. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). In application, however, the Supreme Court has carved two exceptions wherein claims alleging statutory violations are not actionable under Section 1983. A plaintiff may not maintain a suit based on violation of a federal statute if (1) "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of Section 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2516, 110 L.Ed.2d 455 (1990) (*quoting Wright v. Roanoke Redevelopment & Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)). *See also Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989). Therefore, a plaintiff cannot pursue remedies under Section 1983 based on a violation of federal statutory rights or privileges unless the statute creates an enforceable right and Congress has not specifically foreclosed a remedy under Section 1983. *Silver v. Baggiano,* 804 F.2d 1211, 1216 (11th Cir.1986).

■ The Supreme Court has ruled definitively that based on the legislative history and language of the Medicaid Subchapter of the Social Security Act, particularly that the Subchapter does not include provisions for private judicial or administrative enforcement, Congress did not foreclose a private right of remedy under Section 1983 for violations of the Medicaid Act. *Wilder,* 496 U.S. at 517–523, 110 S.Ct. at 2521–2525. Additionally, it is not a point of contention among the parties that Congress has not foreclosed a private right of action for violations of the Medicaid Act. Therefore, the issue this court must address is whether the equal access provision of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A), "creates an enforceable right."

### A. Private Enforceability of Section 1396a(a)(30)(A)

■ In assessing whether a federal statute creates a private enforceable right the court must determine whether (1) the plaintiff is the intended beneficiary of the violated provision; (2) the violated provision creates a binding obligation on the defendant governmental unit rather than reflecting a "congressional preference" for a certain kind of conduct; and (3) the interest asserted by plaintiff is "too vague and amorphous" such that it is "beyond the competence of the judiciary to enforce."[4] *Wilder,* 496 U.S. at 509, 110 S.Ct. at 2517.

---

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress. 42 U.S.C. § 1983.

4. Defendants intimate that the law is unresolved regarding the appropriate method for evaluating whether a statute creates an enforceable right. See Defendants' Brief in Support of Motion to Dismiss filed January 9, 1997 at 8–9 discussing *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). While there had been disputes concerning whether *Suter* imposes a more stringent requirement or otherwise expanded the analysis enunciated in *Wilder, see Albiston v. Maine Comm'r of Human Services,* 7 F.3d 258, 263–264 (1st Cir.1993), *Arkansas Medical Society, Inc. v. Reynolds,* 6 F.3d 519, 522 (8th Cir. 1993) and *Resident Council of Allen Parkway Village v. HUD,* 980 F.2d 1043, 1051 (5th Cir. 1993), on October 20, 1994, Congress resolved the dispute by amending the enforcement provision of the Social Security Act to provide that

in an action brought to enforce a provision of the Social Security Act ..., such provision is not to be deemed unenforceable because of its inclusion in a section of the Act requiring a State plan or specifying the required contents of a State plan. *This section is not intended to limit or expand the grounds for determining the availability of private actions to enforce State plan requirements other than by overturning any such grounds applied in Suter v. Artist M ...., but not applied in prior Supreme Court decisions respecting such enforceability;* provided, however, that this section is not intended to alter the holding in *Suter v. Artist M.* that section 471(a)(15) of the Act [42 U.S.C. § 671(a)(15)] is not enforceable in a private right of action. 42 U.S.C. § 1320a–2 (emphasis added). *See also Visiting Nurse Assoc. of North Shore, Inc. v. Bullen,* 93 F.3d 997, 1003 n. 5 (1st Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997) ("Congress intend that § 1320a–2 serve to resurrect the *Wilder* test, with no *Suter* overlay"); *Stanberry v. Sherman,* 75 F.3d 581, 583–584 (10th Cir.1996) ("Basically, the Congress disavowed *Suter's* approach.... It

■ The starting point for determining whether a statute creates an-enforceable private right of action is the statute itself. The Medicaid program is a cooperative between the federal and state governments for providing medical services to qualifying recipients. *Silver*, 804 F.2d at 1215. State participation in the Medicaid program is voluntary. If a state chooses to participate, however, it must comply with the requirements outlined in the Medicaid Subchapter of the Social Security Act. *Wilder*, 496 U.S. at 502, 110 S.Ct. at 2513; 42 U.S.C. § 1396a. A participating state must submit a plan for providing medical services to qualified recipients which is approved and partially subsidized by the federal government. *See* 42 U.S.C. § 1396. The requirements that the state plan for medical assistance must satisfy are provided in Section 1396a(a). Among the requirements is that a participating state must

provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area

42 U.S.C. § 1396a(a)(30)(A).[5] This provision is commonly referred to as the "equal access" clause.

■ The equal access clause creates two distinct substantive rights: (1) the state's methods and procedures for reimbursement must ensure "equal access" to medical care and services; and (2) the reimbursement rates derived under the state's method must be sufficient to retain an adequate number of health care providers. *Visiting Nurse Ass'n*, 93 F.3d at 1011; *Arkansas Medical Society, Inc. v. Reynolds*, 6 F.3d at 522 & 529–530. The purpose of the "equal access" provision is to require the state to focus its attention on the adequacy of its reimbursement levels to encourage participation of health care providers. *Clark v. Kizer*, 758 F.Supp. 572, 578 (E.D.Cal.1990). A state plan breaches its obligation under the equal access provision if the state reimbursement rate is so inadequate that the number of participating Medicare health care providers is substantially lower than the number of health care providers available to the general population, *id.* at 576–577, if the procedures and method for Medicare reimbursement rate is "far below any reasonable estimate of what it actually costs providers to render the services," *id.* at 577, or if the utilization control methods are so unreasonable and arbitrary that a recipient's medical needs are not satisfied. *DeLuca v. Hammons*, 927 F.Supp. 132, 136 (S.D.N.Y.1996).

### 1) Intended Beneficiary

■ To determine whether health care providers have a private right of action to enforce the equal access provision of the Medicaid Act, several courts have looked to case law addressing this issue under the Boren Amendment of the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A). *See Visiting Nurse Ass'n*, 93 F.3d at 1003; *Methodist Hosp., Inc. v. Sullivan*, 91 F.3d 1026, 1029 (7th Cir.1996); *Arkansas Medical Society*, 6 F.3d at 525. The Boren Amendment vests institutional health care providers with procedural and substantive rights to reasonable and adequate reimbursement rates.[6] *Wilder*,

also reaffirmed the approach taken in the Supreme Court decisions prior to *Suter.*")

Additionally, the law of this district requires the analysis discussed in the text, which follows the directives enunciated in *Wilder*. *See Harris v. James*, 883 F.Supp. 1511, 1520 (M.D.Ala.1995).

**5.** The corresponding regulation, "Encouragement of provider participation," requires that the state's payments to health care providers be "sufficient to enlist enough providers so that services

under the plan are available to recipients at least to the extent that those services are available to the general population." 42 C.F.R. § 447.204.

**6.** The relevant text of Section 1396a(a)(13)(A) states

for payment ... of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates ... [which] are reasonable and adequate

496 U.S. at 509–510, 110 S.Ct. at 2517–18. The Supreme Court found that "there can be little doubt that health care providers are the intended beneficiaries of the Boren Amendment" since the provision establishes a system for reimbursement of providers and is phrased in terms benefitting health care providers. *Id.* at 510, 110 S.Ct. at 2517.

■ The equal access provision also addresses the sufficiency of the state plan's reimbursement methods and procedures for noninstitutional health care providers. In *Visiting Nurse Ass'n of North Shore, Inc. v. Bullen,* the court observed that the Boren Amendment and the equal access provision evince a congressional concern for preserving financial incentives to encourage health care providers to provide services to Medicaid recipients. *Id.* at 1004. Therefore, since providers are intended beneficiaries of the Boren Amendment, they are intended beneficiaries of the equal access provision. *Arkansas Medical Society,* 6 F.3d at 525. *Accord Methodist Hosp.,* 91 F.3d at 1029.

Defendants argue that Moody cannot rely on the prior cases finding that medical providers have standing to challenge Medicaid laws because "all the cases in which medical providers have been found to have standing have involved reimbursement rates or payment procedures." The court's survey of prior case law also failed to reveal circumstances wherein the medical provider challenged the method and procedures that its services were being used under Section 1396a(a)(30)(A). Moody also concedes that the cases addressing a health care provider's rights under Section 1396a(a)(30)(A) challenged the method or amount of payments to a health care provider. Moody argues, however, that there is no law precluding a health care provider from challenging "the method, or lack of method, to ensure the utilization of services available."

The court agrees that regarding the determination whether a health care provider is an intended beneficiary under Section 1396a(a)(30)(A), there has been no distinction based on the substantive right that the medical provider seeks to protect. Additionally, since the equal access provision is likened to the Boren Amendment in its function, to ensure adequate reimbursement rates to health care providers so that Medicaid recipients may have the same access to medical services as the insured population, *Arkansas Medical Society,* 6 F.3d at 525, and there have not been any cases distinguishing the rights medical providers may assert under the Boren Amendment, the court finds that it would not be appropriate to distinguish the rights that medical providers have standing to assert under the equal access provision. Accordingly, the court finds that plaintiff, Moody Emergency Medical Services, as a health care provider is an intended beneficiary of the equal access provision, Section 1396a(a)(30)(A), of the Medicaid Act.[7]

### 2) Binding Obligation v. Congressional Preference

■ Defendants do not challenge whether Section 1396a(a)(30)(A) imposes a binding obligation on the state to establish a plan in accordance with that provision rather than merely expressing a congressional preference. Based upon this court's review of the law addressing this factor, such an argument would be futile. Other courts consistently have rejected arguments attempting to categorize equal access provision as expressing in less than mandatory terms that the state plan provide reimbursement methods and procedures that ensure sufficient medical services to Medicaid recipients. *See Visiting Nurse Ass'n,* 93 F.3d at 1005–1006; *See also Arkansas Medical Society,* 6 F.3d at 526; *Illinois Hosp. Ass'n v. Edgar,* 765 F.Supp.

to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and

reasonable travel time) to inpatient hospital services of adequate quality; . . .

7. Whether plaintiff's complaint is actionable under Section 1396a(a)(30)(A), is a different question that rests on a determination whether plaintiff states a claim for which relief can be granted under that provision. *See infra* Part B.

1343, 1349 (N.D.Ill.1991).[8]  Accordingly, the court finds that the language of Section 1396a(a)(30)(A) imposes a binding obligation on the state to develop a reimbursement plan that ensures the participation of enough health care providers so that Medicaid recipients have access to services and care at least to the extent that the same is available to the insured population in the same geographic area.

### 3) Judicial Enforceability

The issue to be address under the "judicial enforceability" consideration is whether the terms of the statute are so vague and generalized that their "meaning will . . . vary with the circumstances of each case" so as to be insusceptible to judicial enforcement.  *Albiston v. Maine Comm'r of Human Services,* 7 F.3d 258, 264 (1st Cir.1993).  Again, looking to analysis of this issue under the Boren Amendment, courts have ruled that the equal access provision is subject to judicial enforceability.  In *Arkansas Medical Society,* the court reasoned that since Boren Amendment, which is arguably more nebulous than equal access provision because it does not define "reasonable access" whereas equal access provision actually gives a "measuring rod" for accessibility, was sufficiently specific to provide an "objective benchmark" for its judicial enforcement, the equal access provision certainly is susceptible to judicial enforcement.  *Id.* at 527.  *See also Visiting Nurse Ass'n,* 93 F.3d at 1005 (The term "equal access" arguably provides a more concrete standard, objectively measurable against the health care access afforded among the general population whereas the Boren Amendment employs the somewhat less objective benchmark: "reasonable" access); *Methodist Hosp.,* 91 F.3d at 1029 (reversing district court finding that use of the term "geographic area" in the equal access provision created an ambiguity that is not conducive to judicial enforcement).

Based upon the foregoing, the court finds that Section 1396a(a)(30)(A) creates a private enforceable right and that Moody Emergency Medical Service as a medical provider is an intended beneficiary of that right.  Therefore, Moody may pursue a claim under Section 1983 to enforce the requirement that the state plan provide reimbursement methods and procedures which ensure the participation of enough health care providers so that Medicaid recipients have access to services and care at least to the extent as the same is available to the insured population in the same geographic area.  Accordingly, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

### B.  Failure to State a Claim

While the court finds that Section 1396a(a)(30)(A) creates an enforceable right and that plaintiff may pursue a claim alleging a violation of that right, such finding does not inherently conclude that cause of action plaintiff alleges is actionable under Section 1396a(a)(30)(A).  In this regard, it is important that plaintiff's claim is clearly understood.  In this action, plaintiff seeks compensatory and injunctive relief because it is not being permitted equal access to the emergency 911 calls within the police jurisdiction for the city of Millbrook.  Complaint ¶ 15; Amended Complaint ¶ 18.  Specifically, plaintiff alleges that it is Millbrook's custom and practice to refer emergency 911 calls which are funded or paid under Medicaid and/or Medicare to the city's fire department/rescue services.  Complaint ¶ 13; Amended Complaint ¶ 14.  Accordingly, the court must determine whether, accepting plaintiff's allegation that the city of Millbrook refers its emergency 911 calls funded and paid under Medicaid and Medicare to its fire department/rescue services as true, plaintiff states a claim that is actionable under Section 1396a(a)(30)(A).  Additionally, plaintiff makes generic claims against the Alabama

---

**8.**  One of the compelling factors noted by the court in *Arkansas Medical Society* supporting its finding that Congress intended the language of Section 1396a(a)(30)(A) to be mandatory not precatory is Congress's moving the equal access provision from the regulations to include it in the Medicaid Act itself so that it would receive appropriate enforcement.  *Arkansas Medical Society,* 6 F.3d at 526.  This court agrees that such legislative history and statutory structure is compelling evidence of congressional intent.

Medicaid Agency that it failed to provide and enforce methods and procedures of its state plan relating to the utilization of medical care and services so that such services are available to Medicaid recipient to the same extent that they are available to the general population in the city of Millbrook. Amended Complaint ¶¶ 15–16. Therefore, the court also must determine whether these allegations state a claim under Section 1396a(a)(30)(A).

█ The court agrees with defendants' characterization of plaintiff's complaint as an attempt to recover "a market share" of emergency 911 calls within the city of Millbrook. Plaintiff is not challenging the sufficiency of the reimbursement rate that it receives for the services it provides to Medicaid recipients. Plaintiff's contention is that it is not receiving "equal access" or more appropriately, "equal opportunity" to provide its services to Medicaid recipients. Without deciding whether referral of emergency 911 calls to a specific service is actionable under some other provision of the Medicaid Act, the court finds that such conduct is not a violation of Section 1396a(a)(30)(A).[9]

█ As noted previously, the focus of the equal access provision on the state plan's method and procedure for setting reimbursement rates. See *supra* Part III. 1. In codifying the equal access provision by including the regulation in the actual statute Congress observed that obligation of the states to establish pay rates at adequate levels is essential to encouraging participation of medical providers. See H.R. Rep. No. 247 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2060, 2115–2116. Therefore, when a state proposes a change in its reimbursement scheme, a health care provider can rely on the equal access provision to protect its procedural rights, *see Visiting Nurse Ass'n,* 93 F.3d at 1008–1010 (discussing sufficiency of public notice regarding change in method and procedure for setting reimbursement rate); *Oklahoma Nursing Home Ass'n v. Demps,* 792 F.Supp. 721, 726–727 (W.D.Okla.1992), and substantive rights to adequate reimbursement rates. *See Arkansas Medical Society,* 6 F.3d at 530–531 (state agency violated Section 1396a(a)(30)(A) because it did not consider factors outlined in statute to determine its reimbursement rate); *Clark v. Kizer,* 758 F.Supp. at 576–578 (finding violation of equal access provision because state reimbursement rate for dental services was significantly lower than private rate for services and recipients reported being unable to find dentist will to accept them as patients), *aff'd in part, rev'd in part sub nom., Clark v. Coye,* 967 F.2d 585 (9th Cir.1992) (table), 585 N.E.2d 734, 1992 WL 15131 (text). *See also Dowling v. Davis,* 840 F.Supp. 731, 734 (E.D. Cal.1992, *aff'd,* 19 F.3d 445 (9th Cir.1994); *Illinois Hosp. Ass'n v. Edgar,* 765 F.Supp. 1343 (N.D.Ill.1991)). A medical provider may not look to the equal access provision, however, to vest it with the right to a "proportionate share" of Medicaid clientele.

Plaintiff's attempt to rely on the equal access provision to challenge its right to provide services to Medicaid services is not unique. Other district courts, recognizing that Section 1396a(a)(30)(A) addresses the adequacy of a state's reimbursement rate scheme to *attract and maintain* a sufficient number of health care providers, have rejected actions by providers seeking redress for disparity in distribution of the services

---

9. Section 1396a(a)(23) of the Medicaid Act, commonly known as the freedom of choice provision, gives Medicaid recipients the right to choose among a range of qualified providers, without the government interference. *O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 785, 100 S.Ct. 2467, 2475, 65 L.Ed.2d 506 (1980). *See also Silver,* 804 F.2d at 1217 (One of the primary considerations in structuring the Medicaid program was to provide Medicaid recipients with the right to receive medical care from the health care provider of their choice, not the government's choice.) A state plan may violate this provision if it arbitrarily dictates specific providers among several qualified providers from whom the Medicaid recipient must receive medical assistance. *King v. Sullivan,* 776 F.Supp. 645 (D.R.I.1991). *See also Briarcliff Haven,* 403 F.Supp. at 1362; *Bay Ridge Diagnostic Laboratory, Inc. v. Dumpson,* 400 F.Supp. 1104, 1106–1108 (E.D.N.Y.1975). While the court in no way finds that plaintiff's allegations in this action state a violation of the freedom of choice provision that is enforceable by a medical provider since that issue is not presented, the court does find that the inclusion of a freedom of choice provision in the Medicaid Act further demonstrates that the equal access provision is not intended to address challenges concerning the selection of a particular provider for services.

among providers. *See Sobky v. Smoley,* 855 F.Supp. 1123 (E.D.Cal.1994); *DeGregorio v. O'Bannon,* 500 F.Supp. 541 (E.D.Pa.1980).

Based upon a review of the content and structure of the Medicaid Act, the legislative history of Section 1396a(a)(30)(A) and case law addressing the substantive rights available under the equal access provision, the court finds that the redress available to a health care provider under Section 1396a(a)(30)(A) is for a loss that results from inadequate reimbursement rates only. Since plaintiff's claim in this action does not challenge the adequacy of the reimbursement rate for its services, but alleges a claim challenging the distribution of Medicaid recipients for the use of its services, plaintiff fails to state a claim that is actionable under Section 1396a(a)(30)(A).

### 2. Constitutional Claims

Moody also alleges that Millbrook's practice of referring emergency 911 calls to its Fire Department/Rescue Services violates its rights to equal protection under the law as guaranteed by the Fourteenth Amendment and "derogates" its rights and privileges under the Fifth and Fourteenth Amendments. Complaint ¶¶ 20–21; Amended Complaint ¶¶ 23–24. Moody does not expand on its constitutional claims or otherwise respond to defendants' arguments that plaintiff does not have a claim based on violations of its constitutional rights.

Since Moody's Fourteenth Amendment claim is premised on Millbrook's practice and procedure of assigning emergency 911 calls and the State's alleged failure to ensure the utilization of available services, Moody must show that the policies of either entity involve suspect classification or violation of a fundamental right. *Silver v. Baggiano,* 804 F.2d at 1218. Additionally, the conduct complained of does not rise to a constitutional violation unless the policy or practice is not rationally related to a legitimate governmental purpose. *Id. (quoting Hodel v. Indiana,* 452 U.S. 314, 331, 101 S.Ct. 2376, 2386, 69 L.Ed.2d 40 (1981)).

Moody does not allege that Millbrook excludes it from some of the emergency 911 calls based on a suspect classification, i.e. being a women or minority owned business. What is also detrimental to Moody's constitutional claims is that Moody does not have a fundamental right or protectable property interest to receive referrals for Medicaid patients. If Moody had a protectable property interest to specific apportionment of the emergency 911 referrals in the city of Millbrook such an interest would have to derive from a source of state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). It is the plaintiff's burden to identify the statute, regulation or other source of state law that vests it with the asserted protected interest. *Morley's Auto Body, Inc. v. Hunter,* 70 F.3d 1209, 1214 (11th Cir.1996). Moody fails to satisfy this burden. Moody's contention that Alabama's Medicaid Agency failed to provide or enforce a sufficient plan does not articulate a state practice, policy or procedure that would color Millbrook's policy and practices as being sanctioned under state law. In the complaint, Moody also relies upon Section 1396a(a)(30)(A), a federal statute, to support its constitutional claims. Such reliance is misplaced because a plaintiff cannot rely upon a federal source to establish a protected property interest. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Alternatively, a plaintiff cannot rely upon a local policy or practice to establish a constitutionally protected interest. *Morley's Auto Body,* 70 F.3d at 1213. Absent a showing of a violation of a constitutionally protected property interest or fundamental right, an entity's claim that it is not receiving its fair share of business from a municipality's referral system must fail. *See Durham v. Jones,* 698 F.2d 1179, 1181 (11th Cir.1983) (wrecker service's claim that he was not included on Sheriff Department's rotation list for towing services failed because sheriff's rotation policy did not affect wrecker service's fundamental right to do business).

Accordingly, based upon the foregoing, the court finds that Moody's claim that defendants' conduct violates his rights and privileges under the Fifth and Fourteenth Amendments are due to be dismissed because Moody fails to state a claim that gives rise to a violation of either Amendment.

### 3. State Law Claims

■ Plaintiff also alleges that Millbrook's method and procedure for referring emergency 911 calls from Medicaid recipients violates the Constitution of Alabama of 1901, Article I, § 22 and Amendment No. 58, and Alabama's competitive bidding laws, ALA. CODE § 41–16–50 *et seq.* Since the court finds that plaintiff's federal claims are due to be dismissed, it declines to exercise supplemental jurisdiction over plaintiff's state law claims. 28 U.S.C. § 1367(c); *United Mine Workers of America, Inc. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (a federal district court should not exercise discretionary jurisdiction over pendant state claims after the federal claims are dismissed); *Griffin v. City of Clanton, Alabama,* 932 F.Supp. 1359 (M.D.Ala.1996). Accordingly, the court will dismiss without prejudice plaintiff's state law.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that defendants' motions to dismiss filed January 9, 1997, and April 4, 1997 are GRANTED and that plaintiff's causes of action alleging violations of Section 1396a(a)(30)(A) of the Medicaid Act, 42 U.S.C. § 1396a(a)(30)(A), and the Fifth and Fourteenth Amendments of the U.S. Constitution are DISMISSED with prejudice and plaintiff's causes of action alleging violations of the Constitution of Alabama of 1901, Article I, § 22 and Amendment No: 58, and Alabama's competitive bidding laws, ALA. CODE § 41–16–50 *et seq.,* are DISMISSED without prejudice.